1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

LARRY ROSSER,

        Plaintiff,

  vs.

JENNIFER SHAFFER, *et al.*,

        Defendants.

**Case No. 1:16-cv-01342-DAD-EPG-PC**

**FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT THE CASE BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM**

(ECF No. 15)

**OBJECTIONS, IF ANY, DUE IN THIRTY DAYS**

        Plaintiff Larry Rosser is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On September 9, 2016, Plaintiff filed the complaint commencing this action.  (ECF No. 1.)  Plaintiff then filed a First Amended Complaint (the "FAC") on October 11, 2016. (ECF No. 9.) The Court screened the FAC and dismissed it with leave to amend on December 22, 2016. (ECF No. 10.) In that order, the Court set forth the relevant legal standards regarding a prisoner's due process rights regarding parole hearings, as well as other relevant legal principles. Plaintiff filed a second amended complaint (the "SAC") on March 2, 2017. (ECF No. 15.) The Court has screened Plaintiff's SAC and recommends that it be dismissed without leave to amend for the reasons described below.

Plaintiff's SAC alleges that he was denied his constitutional rights when the California Board of Parole Hearings denied his parole. Per legal guidance from the Court, Plaintiff's SAC frames Plaintiff's challenge to the parole hearing as one of process, rather than substance. But this Court's oversight regarding process by state parole boards is very limited. Plaintiff had an opportunity to be heard at the parole hearings and learned the reasons why parole was denied. No more than this is required as a matter of federal due process. The federal courts do not independently judge the merits of a parole decision, nor can they determine the fairest procedures for doing so.  Plaintiff's SAC thus fails to state a claim for violation of Plaintiff's constitutional rights.

## I.   SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  *Id*.  While factual allegations are accepted as true, legal conclusions are not.  *Id*.

## II.    SUMMARY OF PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff alleges that Defendants violated Plaintiff's rights stemming from process and procedures related to state prison parole consideration hearings.  Plaintiff also challenges the customs and practices of parole consideration hearings, which make it difficult for prisoners to get a "fair shake" during those hearings.  Plaintiff asks the Court to impose new safeguards to ensure that eligible prisoners do not face arbitrary parole hearing denials.

Plaintiff explains how the California legislature passed Senate Bill 260 in September 2013. The point of the bill was to afford juvenile offenders "a meaningful opportunity for parole." This bill reflects that the state legislature believed the regular parole process was deficient. SB 260 requires that the Board of Parole Hearings give "great weight" to mitigating youth factors and "any subsequent growth and increased maturity." This bill was codified in California Penal Code § 4801(c). The California Supreme Court has also held that juvenile offenders must have a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation and mandates that specialized youth consideration be given "great weight."

Plaintiff alleges he was deprived of due process right to a fair hearing, to be free from arbitrary governmental action, and a meaningful opportunity to be released and be heard under the Fourteenth Amendment. Plaintiff explains how the state appointed board psychologists create comprehensive risk assessments to determine the level of risk a particular prisoner poses to reoffending. The test used in Plaintiff's parole hearing is called a "Historical Clinical Risk" and has no support as a reliable predictor of violence among juvenile offenders. The instrument was primarily designed for forensic patients, civil psychiatric patients, and mentally disordered offenders. Plaintiff does not fall under those categories and thus its application to him is

unconstitutional. The measure also improperly considers youth an aggravating, rather than mitigating, factor.

The psychological evaluations conducted by the forensic assessment division are not audio recorded or otherwise transcribed. These reports often contain misquotes that are allegedly attributed to the prisoner. Recording these examinations will likely promote transparency, integrity and fairness in the evaluations. The Board has recently proposed new regulations that leave intact these disadvantages.

The lack of a swift and effective appeal system regarding Parole Board matters demonstrates deliberate indifference.

Plaintiff seeks outside experts to perform independent psychological evaluations for future hearings, *i.e.*, experts who specialize in neuroscience, and who will employ proper adequate assessment instruments and techniques.

Plaintiff also claims that the 2016 panel violated Plaintiff's constitutional rights to due process, to receive a fair hearing, to be protected against arbitrary governmental action, to a meaningful opportunity to be heard, to be adequately and effectively distinguished as a juvenile offender and a battered person, to a meaningful opportunity to obtain release, to receive equal protection, to be free from cruel and unusual punishment, and to a jury trial. Plaintiff's 2016 Youth Offender Parole Consideration Hearing was tainted by methodical exclusion of information bearing significantly on Plaintiff's cognitive activity. The panel's failure to give great weight to Dr. Kaser-Boyd's report, which breaks down the dynamics of how youth hallmarks interact with the effects of intimate partner battering, was unfair and violated Plaintiff's constitutional rights.  The panels' dismissal of Dr. Kaser-Boyd's report was contrary to SB 260. Plaintiff was 16 years old at the time of the offense. Plaintiff's crime happened in 1994.

Plaintiff also describes his mental state at the time of the crime and how he believed that the victim had a brick in her hand and was charging at him.  The panel misconstrued his

4

statements about his mental state of mind, however.  Plaintiff includes portions of the expert report of Dr. Kaser-Boyd, which Plaintiff claims was improperly disregarded.  Plaintiff explains that the Commissioner improperly attempted to judge Plaintiff's credibility including use of Plaintiff's testimony at trial, which was improper and amounted to retrying, reconvicting, and resentencing Plaintiff.

Plaintiff also claims that his due process rights were violated because he did not receive an accurate and verbatim account of the parole hearing, which abridged his right to petition the courts. Parole consideration hearings are audio recorded and later transcribed.  However, the process does not make provisions for the prisoner to present corrections to the record before it becomes official. The prisoner is not entitled to the audio recording.

Plaintiff also contends that the parole panel changed theories between his earlier hearing and most recent one. The Commissioner admitted that Plaintiff had addressed every single problem raised at an earlier hearing, but nevertheless denied parole on the ground that Plaintiff needs more programming, without giving specific suggestions. Juvenile offenders are required to have consultation hearings where they are advised what is expected of them. Defendant Zarrinam also claimed that "the gist of why Plaintiff is being denied parole" is because Plaintiff is minimizing his previous lifestyle, which misunderstands the causative factors in his crime, *i.e.*, the abuse he experienced in his relationship with the victim.

Plaintiff was required to have at least one of the Commissioners from his previous hearing at this subsequence hearing, but that did not happen here. This improperly allowed the parole board to change theories of denial, which was unconstitutionally arbitrary. Plaintiff did everything he could to address the prior board's concerns and it was unfair to set forth wholly new concerns at the subsequent hearing.

The Commissioners also failed to credit significant evidence of growth and increased maturity.  Plaintiff quotes many examples of his growth and maturity as presented to the board.

Plaintiff also claims that the Board of Parole Hearings reached a settlement where it

agreed to promptly term-fix sentences and calculate credits for "all life term inmates," upon their Initial Parole Consideration Hearing.  At both of Plaintiff's hearings, the panels failed to fix his term according to the parole matrix and the agreement.

Plaintiff names as defendants:  Jennifer Schaffer, Executive Officer of the Board of Parole Hearings; Elizabeth Richardson, Commissioner of Board of Parole Hearings; Ali Zarrinnam, Commissioner of Board of Parole Hearings; Kelly Fowler, Deputy Commissioner of Board of Parole Hearings; Cliff Kusag, Chief Psychologist of Board of Parole Hearings; June R. Pennington, Transcriber; Scott Kernan, Secretary of California Department of Corrections and Rehabilitation; and James McNarin, Psychologist.

## III.   DISCUSSION

The Civil Rights Act, under which this action was filed, provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989), *quoting Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that:  (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law.  *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the

meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007), *quoting Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183, *quoting Johnson*, 588 F.2d at 743.  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A.     **A Section 1983 Lawsuit Cannot Challenge Confinement**

As an initial matter, to the extent Plaintiff seeks to challenge the duration or fact of his sentence, his sole federal remedy is a writ of habeas corpus and a lawsuit under 42 U.S.C. § 1983 is inappropriate. *Preiser v. Rodriguez*, 411 U.S. 475, 479 (1973) ("Release from penal custody is not an available remedy under the Civil Rights Act"); *Young v. Kenny*, 907 F.2d 874, 875 (9th Cir. 1989) ("Where a state prisoner challenges the fact or duration of his confinement, his sole federal remedy is a writ of habeas corpus.").

As explained below, the Court's review of Plaintiff's parole hearings in a § 1983 lawsuit is restricted to limited procedural challenges and cannot proceed if he seeks to challenge the validity or duration of his sentence. *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) ("§ 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner . . . habeas remedies do not displace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of (not previously invalidated) state confinement.") (emphasis in original).

B.     **Due Process – Fourteenth Amendment**

The Due Process Clause of the Fourteenth Amendment does not provide any right "to be conditionally released before the expiration of a valid sentence, and the States are under no

duty to offer parole to their prisoners." *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011). When a state enacts a statutory scheme allowing parole, however, the state creates a liberty interest and "the Due Process Clause requires fair procedures for its vindication." *Id.*

In *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979), the U.S. Supreme Court held that, as a matter of federal Due Process, the U.S. Constitution requires that inmates facing a parole decision be given:  (1) an opportunity to be heard, and (2) an ability to learn why parole was denied. *Id.* at 16 ("The Nebraska procedure affords an opportunity to be heard, and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole; this affords the process that is due under these circumstances. The Constitution does not require more."). The U.S. Supreme Court continues to adhere to *Greenholtz* and engages in very limited review of parole board procedures:

> Whatever liberty interest exists is, of course, a *state* interest created by California law. There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners. When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication—and federal courts will review the application of those constitutionally required procedures. In the context of parole, we have held that the procedures required are minimal. In *Greenholtz,* we found that a prisoner subject to a parole statute similar to California's received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied. "The Constitution," we held, "does not require more." Cooke and Clay received at least this amount of process: They were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied.

*Swarthout*, 562 U.S. at 220 (internal citations omitted).  *See also Miller v. Oregon Bd. of Parole and Post Prison Supervision*, 642 F.3d 711, 716 (9th Cir. 2011) ("The Supreme Court held in *Cooke* that in the context of parole eligibility decisions the due process right is *procedural,* and entitles a prisoner to nothing more than a fair hearing and a statement of reasons for a parole board's decision . . . .").[1]

---

[1] Although unpublished, the following are also illustrative of application of this law.  *See  Williams v. Schwarzenegger,* 461 Fed.Appx. 621, 623 (9th Cir. 2011) ("Williams received an opportunity to be heard and a

Here, Plaintiff was heard at the parole hearings. *See, e.g.,* ECF No. 15 at p. 12 ("Plaintiff was interrogated about details of the life crime by Zarrinam."). Plaintiff was told why parole was denied. *See e.g.*, ECF No. 15 at p. 15 ("Defendant Zarrinnam stated that 'the gist of why Plaintiff is being denied parole' is because Plaintiff is minimizing his previous lifestyle."). No more is due as a matter of federal Due Process.

The Court appreciates that Plaintiff's SAC attempted to discuss the procedures of his parole hearings, rather than merely the merits. Plaintiff's allegations still do not state a claim under federal law. As discussed above, the federal court's oversight into parole hearings is very limited. This Court does not ensure that the Board of Parole Hearings is complying with state law, such as the weight given to expertise regarding an offenders' age or other factors. It also does not determine if better procedures would be fairer, such as providing an audio recording to prisoners. Nor does it evaluate whether the evidence presented to the Parole Board was accurately and fairly evaluated. As this Court explained in its initial screening order, the Board of Parole Hearings possesses great discretion in making individual parole decisions. *In re Rosenkrantz*, 29 Cal.4th 616, 655 (2002) ("The [Board's] discretion in parole matters has been described as 'great' and 'almost unlimited'."). This Court cannot review the substantive merits of a Board of Parole Hearings decision in a § 1983 action.

## C.     Cruel and Unusual Punishment – Eighth Amendment

Plaintiff alleges that the Board's conduct during the parole hearings constituted cruel and unusual punishment. As explained above, neither parole hearings nor the denial of parole constitutes "punishment" and thus do not run afoul of the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"). A parole denial is not an extension of Plaintiff's sentence or an imposition of an additional sentence and is

---

statement of reasons why parole was denied."); *Slater v. Sullivan*, 447 Fed.Appx. 759, 760 (9th Cir. 2011) ("Federal habeas relief is not available for errors of state law . . . . Rather, when there is a liberty interest in parole, 'an opportunity to be heard' and 'a statement of reasons why parole was denied' are sufficient to satisfy federal due process. In this case, Petitioner had an opportunity to be heard before the California Board of Parole Hearings, and he was provided with a statement of reasons for his parole denial. Therefore, Petitioner's due process rights were not violated.") (internal citations omitted).

"presumptively valid" as long as it falls "within legislatively mandated guidelines." *United States v. Mejia-Mesa*, 153 F.3d 925, 930 (9th Cir. 1998) ("Generally, so long as the sentence imposed does not exceed the statutory maximum, it will not be overturned on eighth amendment grounds.").

### D. Judicial Immunity

Individuals acting in a judicial capacity are immune from civil liability for actions taken within their judicial jurisdiction. *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction."). Immunity from damages extends to members of state parole boards when they make decisions "'to grant, deny, or revoke parole' because these tasks are 'functionally comparable' to tasks performed by judges." *Swift v. California*, 384 F.3d 1184, 1189 (9th Cir. 2004) ("Absolute immunity has also been extended to parole officials for the 'imposition of parole conditions' and the 'execution of parole revocation procedures,' tasks integrally related to an official's decision to grant or revoke parole."), *quoting Anderson v. Boyd*, 714 F.2d 906, 909-910 (9th Cir. 1983). It also encompasses "other officers of government whose duties are related to the judicial process," including, for example, "court-appointed psychiatrists who prepar[e] and submi[t] medical reports" for judicial purposes. *Burkes v. Callion*, 433 F.2d 318, 319 (9th Cir. 1970); *Burns v. Cnty. of King*, 883 F.2d 819, 822 (9th Cir. 1989) ("probation officers preparing presentence reports for the use of state courts are absolutely immune from damage liability under section 1983.").

This immunity exists to ensure that parole board members function as impartial fact finders in each case before them. *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981) ("If parole board officials had to anticipate that each time they rejected a prisoner's application for parole, they would have to defend that decision in federal court, their already difficult task of balancing the risk involved in releasing a prisoner whose rehabilitation is uncertain against the public's right to safety would become almost impossible.").

10

Defendants Schaffer, Richardson, Zarrinnam, and Fowler are all members of the Board of Parole Hearings who supervised or presided over Plaintiff's parole hearings and the current lawsuit is targeted at actions they took while presiding over those hearings, including the consideration of certain kinds of evidence and the questions they asked Plaintiff. Defendant Kusag is the Chief Psychologist of the Board of Parole Hearings who allegedly reviewed and approved a comprehensive risk assessment submitted to the Board for consideration at the hearings. Those actions were all integrally related to the decisions to deny Plaintiff parole. These defendants are thus entitled to judicial immunity and Plaintiff cannot pursue damages claims against them.[2]

### E.     State Action

As explained above, a claim under § 1983 requires that a defendant be acting under "color of state law." *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012). "[P]rivate parties are not generally acting under color of state law, and we have stated that '[c]onclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act.'" *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991) ("Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power. It also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed").

Plaintiff asserts a claim against Defendant Pennington, a court reporter with Northern California Reporters. There is no allegation that Defendant Pennington is a state actor and, in fact, Pennington appears to a private individual working for a private company. Plaintiff thus cannot assert a § 1983 claim against Defendant Pennington. *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996) ("Individuals bringing actions against private

---

[2] Plaintiff may, of course, pursue prospective injunctive or declaratory relief against state judicial actors. *Pulliam v. Allen*, 466 U.S. 522, 541 (1984). As noted above, however, the particular injunctive and declaratory relief he seeks in the SAC is likely unavailable for other reasons.

parties for infringement of their constitutional rights, therefore, must show that the private

parties' infringement somehow constitutes state action.").

## IV.    CONCLUSION AND ORDER

For the reasons set forth above, the Court finds that Plaintiff's Second Amended

Complaint fails to state a claim and RECOMMENDS that Plaintiff's Second Amended

Complaint be dismissed without leave to amend and the case be closed.

These findings and recommendations will be submitted to the United States District

Judge assigned to this case pursuant to the provisions of Title 28 of the United States Code

section 636(b)(1). Within **thirty days** after being served with these findings and

recommendations, the parties may file written objections with the Court. The document should

be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties

are advised that failure to file objections within the specified time may waive the right to appeal

the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v.*

*Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).


IT IS SO ORDERED.


Dated:   __**March 20, 2017**__                      /s/ *Erica P. Grosjean*

                                                          UNITED STATES MAGISTRATE JUDGE